# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 1:20-MJ-00085 |
| INFORMATION ASSOCIATED WITH toth999gabor@mail.com that are stored at premises controlled by 1&1 Mail & Mail Media, Inc., 701 Lee Rd, Suite 300, Chesterbrook, PA 19087 | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1030 | Unauthorized Access to a Computer |
| 18 U.S.C. 1343 | Wire Fraud |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Devin Peugh, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __Jan 30, 2020__

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the accounts identified as email accounts controlled by the web-based electronic mail service provider known as 1&1 Mail & Media, Inc., headquartered at 701 Lee Road, Suite 300, Chesterbrook, PA 19087.  The account to be searched is **toth999gabor@mail.com**.

## ATTACHMENT B

### Particular Things to be Seized

### I.     Information to be disclosed by the PROVIDER

To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all emails associated with the account from January 1, 2018 to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

       e.       All records pertaining to communications between the PROVIDER and any person regarding the accounts, including contacts with support services and records of actions taken.

The PROVIDER is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1029(a)(8) and 18 U.S.C. § 1349, and occurring since January 1, 2018 to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Fraud and related activity in all of its forms, including but not limited to the theft, acquisition, sale, and use of financial institution data such as customer banking account information and customer credentials, identification of co-conspirators or other parties to the fraudulent scheme;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to fraud, including records that help reveal their whereabouts.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH | |
| **toth999gabor@mail.com** | Case No. **1:20-MJ-00085** |
| that are stored at premises controlled by 1&1 Mail & Media, Inc., 701 Lee Road, Suite 300, Chesterbrook, PA 19087 | **Filed Under Seal** |

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Devin Peugh, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by 1&1 Mail & Media, Inc., headquartered at 701 Lee Road, Suite 300, Chesterbrook, PA 19087 (the "PROVIDER"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I have been employed as a Special Agent of the Federal Bureau of Investigation since March 2019, and am currently assigned to the Cincinnati Division. Prior to my

employment at the Federal Bureau of Investigation, I was employed for five years as a Staff Operations Specialist for the Federal Bureau of Investigation, assigned to the San Diego Division. While employed by the Federal Bureau of Investigation, I have investigated federal criminal violations related to high technology or cybercrime, terrorism, money laundering, and credit card fraud. I have gained experience through training at the Federal Bureau of Investigation and everyday work relating to conducting these types of investigations. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1029(a)(8) and 18 U.S.C. § 1349, among other offenses, have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND ON CREDIT CARD SKIMMERS

5. The FBI has been investigating a credit card fraud scheme which utilizes skimming devices ("skimmers") placed on and inside ATMs in the Southern District of Ohio,

which acquire credit and debit card information from victims.

6.      Based on my training and experience, I know that it is possible to re-encode digitally stored account information onto the magnetic strip of any type of plastic access device using commercially available digital reader-writer devices and the corresponding computer software that comes with the devices.  These devices and this software have legitimate commercial uses such as coding hotel room keys and creating security badges.

7.      Based on my training and experience, I know that subjects that use fraudulently re-encoded credit and debit cards purchase prepaid credit cards as a way to conceal the illegitimate source of funds and carry on the fraud.  Prepaid credit and debit cards are also a common tool for perpetrators of fraud and identity theft.  The perpetrators can also use the prepaid cards to re-encode compromised credit card account data onto access devices which they then use to make fraudulent purchases such as additional prepaid credit cards at stores such as Walmart and Kroger.

8.      The process of purchasing prepaid credit cards at retail stores involves the transmission of electronic communications via wire communication between the point of sale and the bank that holds the compromised account that is being charged for the transaction, and the bank that issued the prepaid credit card.  These communications are transmitted in interstate commerce because the various banks are located in different states from each other and from the points of sale, and because communications sent via wire communications travel interstate based on the locations of the service providers.

9.      Through my training and experience, I know skimmers to be devices used to covertly collect credit and/or debit card data from victims.  The illegally collected credit and

debit card numbers are considered access devices. The credit and debit card number related to a victim's account and the cards and card numbers are issued by banks which are federally insured financial institutions.

10.    A "skimmer" placed inside an ATM collects card information from victims when that victim uses a card at the ATM. The skimmer is installed between the credit card reader and the other internal circuitry of the ATM. In addition to the skimmer, the subjects may also install a camera on the face of the ATM to capture entries made by customers on the pin pad of the ATM. This is used to obtain both the card number and corresponding PIN for the card.

11.    The skimmer usually does not keep the ATM from otherwise functioning properly; the intended transaction will typically proceed without interruption of any kind or any notification to the victim or third party. Because of this and the fact that the skimmer is installed inside the ATM, it is impossible for victims using the ATM to detect the presence of the skimmer. Additionally, the skimmer does not require a successful transaction to collect the card data; the card data is collected when the victim swipes their card.

12.    A single skimmer is capable of storing card information for hundreds of victims. A credit or debit card contains a magnetic strip that contains information such as the card holder's name, card number, and expiration date. The victim card data is then used to create a clone of the compromised credit card by re-encoding another card, such as a prepaid card or gift card, with victim card information.

4

13.     To make the card appear more legitimate to third parties, the subjects may use a credit card embossing device to physically stamp a name of their choosing onto the newly written card.

14.     Based on my training and experience I know that individuals involved in ATM skimming activity typically use re-encoded cards at ATMs to withdraw cash from the associated account. The subjects use a variety of equipment to re-encode cards such as card reader/writers, laptops or computers with software specifically designed to read/write data to cards.

15.     Based on my training and experience I know that individuals sometimes work in groups in furtherance of skimming activity.  Once an individual manufactures a skimmer, that individual will use the skimmer in one or more of the following ways:  First, the individual can personally use the skimmer to collect card information.  Second, the individual can sell the device to another person who will then use the device to collect card information.  Third, the individual can provide the device to another person in return for a portion of cards collected by the device as payment.  The re-encoded cards can then be used to purchase prepaid goods and services, cashed out, or sold to other individuals.

16.     Based on my training and experience I know that individuals involved in skimming sometimes travel from one region to another inserting skimmers, re-encoding cards, and conducting cash out ATM transactions. This sometimes requires individuals involved in skimming to travel with the requisite electronics to conduct skimming activities.

## **PROBABLE CAUSE**

17.     On September 4, 2019, the Colerain Police Department alerted the FBI that a

5

financial institution (hereafter Financial Institution-1) located in Colerain Township, Ohio, and headquartered in the Southern District of Ohio, had detected ATM skimming activity at one of Financial Institution-1's ATMs (hereafter ATM-1). On September 5, 2019, Financial Institution-1 provided ATM camera footage to the FBI. A review of this camera footage revealed the following:

a. On August 7, 2019, at approximately 6:53am, an individual with a gray sweatshirt, gray t-shirt, dark baseball hat, with a dark beard and mustache (hereafter Individual-1) approached ATM-1 on foot. Individual-1 proceeded to remove a long dark bar from his sweatshirt and place it below the face of ATM-1. Based on my training and experience, I know that when installing a skimming device individuals will typically also install a camera facing the pin pad of the ATM in order to capture the PIN numbers entered by customers. At approximately 6:54am, Individual-1 departed from ATM-1 on foot.

b. On August 7, 2019, at approximately 7:00am, an individual wearing a black t-shirt and gray baseball hat, with dark facial hair (hereafter Individual-2) approached ATM-1 on foot carrying what appeared to be an electronic device. Individual-2 proceeded to insert the device into ATM-1's card reader. Individual-2 then removed a card from Individual-2's wallet and inserted the card into ATM-1's card reader. Individual-2 inserted the card into ATM-1's card reader multiple times while manipulating the face of ATM-1, during this process Individual-2 did not receive any cash or receipts from ATM-1. Based on my training and experience, I believe Individual-2 installed a skimmer inside of ATM-1 and was inserting cards to ensure it was installed properly. At approximately 7:00am,

6

Individual-2 departed from ATM-1 on foot.

c. On August 11, 2019, at approximately 8:58pm, Individual-1 approached ATM-1 on a bicycle. Individual-1 then removed a contraption from the basket of the bicycle. Individual-1 proceeded to use this contraption to remove a device from ATM-1. Individual-1 continued to manipulate the face of ATM-1 and removed the black bar installed beneath the face of ATM-1. At approximately 8:59pm, Individual-1 departed on a bicycle from ATM-1.

18.     Financial Institution-1 provided the FBI a list of approximately 342 debit card numbers that had been compromised as a result of the skimming device installed on ATM-1 from August 7, 2019, to August 11, 2019. This list included the locations of any cash out attempts conducted using the compromised card numbers. The majority of these cash out attempts occurred at ATMs at another Financial Institution (hereafter Financial Institution-2).

19.     Based on my training and experience I know individuals involved in card skimming will encode compromised card numbers onto blank magnetic stripe cards which are then used to conduct ATM cash withdrawals from the compromised card account.

20.     Financial Institution-2 provided the FBI with ATM camera photos of Individual-1, Individual-2, and a third individual, using the compromised card numbers taken from Financial Institution-1 to conduct cash withdrawals at six of Financial Institution-2's ATMs in the Southern District of Ohio.

21.     The third individual involved has been identified as **Valerica Ivanovici (also known as Jeno Urban, Zoltan Toth, and Valerica Eugen) (hereinafter "Ivanovici")**.  A review of Financial Institution-2's ATM photos showed Ivanovici conducting cash withdrawals at multiple ATMs using compromised card numbers obtained from the skimming device

7

previously installed on ATM-1. Ivanovici's identity was determined through a comparison of ATM photos with a photograph used by Ivanovici on a prior visa application.

22.     On July 1, 2019, local and federal law enforcement agencies conducted a search of a vacation rental in Louisville, Kentucky rented by Ivanovici, using the alias "Zoltan Toth." The owner of the residence reported that Ivanovici had left what the owner believed to be bomb making materials in the residence. The owner discovered these materials following Ivanovici's departure from the rental and consented to law enforcement conducting a search of the rental. This search identified materials that law enforcement officers believed were used to build skimming devices in Ivanovici's rented residence. The search also identified a receipt from a LensCrafters location in Cincinnati, Ohio where Ivanovici had visited.

23.     LensCrafters appointment records indicated that Ivanovici used his alias of "Zolton Toth" and listed his contact address as 703 Mount Hope Ave., Cincinnati, OH 45204.

24.     Open source research revealed that the residence at 703 Mount Hope Ave., Cincinnati, OH 45204 was another vacation home rental. The residence was available for individuals to rent through the rental service HomeAway Inc.

25.     On December 13, 2019, another FBI Agent and I interviewed the owner of 703 Mount Hope Ave., Cincinnati, OH 45204. The owner of the residence confirmed that one unit of 703 Mount Hope Ave. had been used as a vacation rental on multiple occasions. I then showed the owner of 703 Mount Hope Ave., a photograph of Ivanovici, whom the owner immediately identified as "Zolton Toth." The owner of 703 Mount Hope Ave., stated Ivanovici had stayed at the vacation rental for approximately two months in early 2019.

26.     HomeAway Inc. provided rental records of Ivanovici's stay at the aforementioned address under the name Zolton Toth. These records identified **toth999gabor@mail.com**

8

(hereafter TARGET ACCOUNT) as the email address Ivanovici (aka Toth) used to reserve his vacation home stays.

27.     Based on the above, there is reason to believe that the contents of the TARGET ACCOUNT may include records of travel, including but not limited to travel receipts, itineraries, reservation requests and/or inquiries, among other communications that would reveal the location of Ivanovici, as well as evidence of his ongoing criminal activities.

## BACKGROUND CONCERNING EMAIL

28.     In my training and experience, I have learned that the PROVIDER provide a variety of on-line services, including electronic mail ("email") access, to the public. The PROVIDER allow subscribers to obtain email accounts at the domain names gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER ask subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications (including retrieved and unretrieved email for the PROVIDER subscribers) and information concerning subscribers and their use of PROVIDER services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the accounts' user or users.

29.     In my training and experience, email PROVIDER generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of

9

payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

30.     In my training and experience, email PROVIDER typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email PROVIDER often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

31.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may

10

constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

32.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  For example, as described below, email PROVIDER typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*,

11

communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

33.     Based on the foregoing, I believe there is probable cause that evidence of the aforementioned scheme exists in the target email account.  Because the warrant will be served on the PROVIDER, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the warrant at any time in the day or night.

## REQUEST FOR SEALING

34.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Devin Peugh
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____January 30_____, 2020

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

## Property to be Searched

This warrant applies to information associated with the accounts identified as email accounts controlled by the web-based electronic mail service provider known as 1&1 Mail & Media, Inc., headquartered at 701 Lee Road, Suite 300, Chesterbrook, PA 19087.  The account to be searched is **toth999gabor@mail.com**.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by the PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account from January 1, 2018 to present, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

2

        e.      All records pertaining to communications between the PROVIDER and any person regarding the accounts, including contacts with support services and records of actions taken.

The PROVIDER is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1029(a)(8) and 18 U.S.C. § 1349, and occurring since January 1, 2018 to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Fraud and related activity in all of its forms, including but not limited to the theft, acquisition, sale, and use of financial institution data such as customer banking account information and customer credentials, identification of co-conspirators or other parties to the fraudulent scheme;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to fraud, including records that help reveal their whereabouts.

4

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC
RECORDS PURSUANT TO FEDERAL RULES OF
EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by 1&1 Mail & Media, Inc., and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of 1&1

Mail & Media, Inc.. The attached records consist of _____ **[GENERALLY**

**DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of 1&1 Mail & Media, Inc., and they were made by 1&1 Mail & Media, Inc. as

a regular practice; and

b.      such records were generated by 1&1 Mail & Media, Inc. electronic process or

system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of 1&1 Mail & Media, Inc. in a manner to ensure that they are true

duplicates of the original records; and

5

2.      the process or system is regularly verified by 1&1 Mail & Media, Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                      Signature